UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOAN WILTURNER                         CIVIL ACTION NO. 6:13-cv-00631

VERSUS                                 JUDGE DOHERTY

CAROLYN W. COLVIN,                     MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### BACKGROUND

The claimant, Joan Wilturner, was born on December 28, 1956.[1]  She has a

ninth grade education[2] and past work experience as a bag inspector, deli worker, and

hairdresser.[3]  The decision of the Administrative Law Judge ("ALJ") states that Ms.

Wilturner applied for a period of disability, for disability insurance benefits, and for

supplemental security income on January 18, 2011.[4]  The record does not contain any

---

[1]     Rec. Doc. 7-3 at 50.

[2]     Rec. Doc. 7-3 at 71.

[3]     Rec. Doc. 7-3 at 71-72.

[4]     Rec. Doc. 7-1 at 14.

evidence of such applications having been made on that date.  The record evidences only an application for disability insurance benefits made on March 2, 2011.[5]  On that date, Ms. Wilturner was 54 years of age, and she alleged a disability onset date of June 1, 2004.[6]  At the time of the hearing, she was 55 years old.  She is now 57.  She has not worked since 2001[7] except for an unsuccessful attempt at returning to hairdressing in 2011.[8]

Ms. Wilturner injured her neck and arm at work in 1999.[9]  In 2001, she left work because her injury prevented her from performing her work duties.[10]  On September 4, 2002, Dr. Stephen Goldware, a neurosurgeon, performed an anterior diskectomy with decompression and fusion with instrumentation at C5-6 and C6-7.[11]  Although her pain was totally relieved immediately after surgery,[12] Ms. Wilturner

---

[5]     Rec. Doc. 7-3 at 50.

[6]     Rec. Doc. 7-3 at 50.

[7]     Rec. Doc. 7-3 at 76.

[8]     Rec. Doc. 7-3 at 77.

[9]     Rec. Doc. 7-1 at 69.

[10]    Rec. Doc. 7-1 at 69.

[11]    Rec. Doc. 7-3 at 18.

[12]    Rec. Doc. 7-3 at 2.

soon began complaining of shoulder pain.[13]  On September 9, 2003, one year after surgery, Dr. Goldware noted that "she is hurting a lot."[14]  Diagnostic studies were performed.  Nerve conduction studies in November 2003 were negative, and a cervical myelogram was negative except for a bulge at C4-5, just above the fusion.[15]

In January 2004, Ms. Wilturner began treating with Dr. Joseph T. Gillespie for pain management.  He diagnosed her with possible digital nerve injury in the fingertip of the index finger of the left hand; mild bursitis at the shoulder; and degenerative disc disease, osteoarthritis, and facet arthropathy at the base of the neck.[16]  "A series of diagnostic injections were placed, specifically trigger points, at the base of the neck that seemed to help the pain in that area.  The left subacromial bursa was also injected that helped some of the upper arm burning and pain."[17]

On March 3, 2005, Ms. Wilturner reported to Dr. Goldware that she was much improved due to several injections.[18]  Thereafter, however, she reported numbness and tingling in her left hand, which Dr. Goldware suspected might be left carpal

---

[13]     Rec. Doc. 7-3 at 1.

[14]     Rec. Doc. 7-2 at 80.

[15]     Rec. Doc. 7-2 at 76.

[16]     Rec. Doc. 7-1 at 70.

[17]     Rec. Doc. 7-1 at 70.

[18]     Rec. Doc. 7-2 at 70.

-3-

tunnel syndrome.[19]   Further cervical facet injections were administered in March 2004,[20] May 2004,[21] and March 2005.[22]   In November 2005, Ms. Wilturner complained to Dr. Goldware of radicular pain in her left arm and numbness and tingling in her left hand.[23] Electrical tests for carpal tunnel syndrome were negative, her neck had almost a full range of motion, her strength was normal, and she had "been getting significant relief from cervical epidural steroid injections by Dr. Gillespie."[24] Dr. Goldware did not think that further surgery on her neck would help, and he discharged Ms. Wilturner to Dr. Gillespie.[25] Ms. Wilturner continued to treat with Dr. Gillespie through 2008.[26] His impression was that she had cervical myofascial pain, degenerative disk disease of the cervical spine, osteoarthritis of the cervical spine,[27] and cervical facet arthropathy.[28] In 2010 and 2011, Ms. Wilturner

---

[19]     Rec. Doc. 7-2 at 67.

[20]     Rec. Doc. 7-1 at 77.

[21]     Rec. Doc. 7-1 at 76.

[22]     Rec. Doc. 7-1 at 75.

[23]     Rec. Doc. 7-2 at 65.

[24]     Rec. Doc. 7-2 at 65.

[25]     Rec. Doc. 7-2 at 66.

[26]     Rec. Doc. 7-2 at 19-27, 30,-31 47, 74.

[27]     Rec. Doc. 7-2 at 47.

[28]     Rec. Doc. 7-2 at 19-22, 24-27.

was seen by physicians at University Medical Center ("UMC") in Lafayette, Louisiana, for complaints of pain and muscle spasms in her neck and arms.[29]

In March 2003, before the alleged onset of disability, Dr. Goldware opined that Ms. Wilturner was capable of working light duty with certain additional restrictions.[30] In Dr. Gillespie's initial evaluation of Ms. Wilturner, in January 2004, he "suggest[ed] continuing light duty as per Dr. Goldware,"[31]  On July 13, 2004, however, Dr. Goldware opined that Ms. Wilturner was no longer capable of returning to work, designating her as "not fit for duty."[32]  On March 3, 2005, Dr. Goldware again noted that she was not fit for duty.[33]  On August 9, 2005, Dr. Gillespie opined that Ms. Wilturner was able to perform light duty work on a full time basis.[34]  On August 30, 2005, however, Dr. Goldware reiterated that it was his opinion that Ms. Wilturner was incapable of working.[35]  Dr. Goldware discharged Ms. Wilturner from

---

[29]     Rec. Doc. 7-2 at 6-8, 53-55.

[30]     Rec. Doc. 7-2 at 83.

[31]     Rec. Doc. 7-1 at 70.

[32]     Rec. Doc. 7-2 at 74.

[33]     Rec. Doc. 7-2 at 71.

[34]     Rec. Doc. 7-1 at 74.

[35]     Rec. Doc. 7-2 at 68.

his care in November 2005, as she was continuing to treat with Dr. Gillespie.[36]  On November 13, 2006, Ms. Wilturner told Dr. Gillespie that the only relief she obtained from pain was the epidural injections, which she reported helped for one to two months.[37]  On January 15, 2007, Dr. Gillespie's opinion was that Ms. Wilturner could perform sedentary work on a part-time basis no more than four hours per day, three days per week.[38]  He reiterated his opinion that she should perform only part-time sedentary work in his treatment notes of March 8, 2007, March 22, 2007, and June 28, 2007.[39]  On September 27, 2007, Dr. Gillespie's opinion was that Ms. Wilturner could perform sedentary work but he did not indicate whether he thought she could work full time or only part-time.[40]  His treatment note from March 17, 2008 contains an identical opinion.[41]

On June 25, 2011, Ms. Wilturner was examined by Dr. Erik Soine at the request of Disability Determination Services.[42]  Ms. Wilturner told Dr. Soine about

---

[36]     Rec. Doc. 7-2 at 65-66.

[37]     Rec. Doc. 7-2 at 47.

[38]     Rec. Doc. 7-2 at 27.

[39]     Rec. Doc. 7-2 at 26, 25, 23, respectively.

[40]     Rec. Doc. 7-2 at 22.

[41]     Rec. Doc. 7-2 at 20.

[42]     Rec. Doc. 7-2 at 9-12.

her neck surgery and reported that her neck pain had been progressively worsening. She described pain in her neck, radiating down both arms into her hands and fingers. She also reported bilateral ankle pain for the prior year.  Dr. Soine concluded that "there is not enough evidence to say there are definitive limitations given her history of a cervical spine fusion."[43]

In October 2011, Ms. Wilturner's then-current physician at UMC, Dr. Fernando del Toro, provided a medical source statement, in which he opined that she should not lift or carry at work, can sit for two hours at a time without interruption, can stand or walk for the same amount of time, but can sit or stand/walk for a total of only two hours per work day, would require thirty minute breaks every two hours, and is limited with regard to both arms in handling, feeling, and fingering.[44]

At the February 2012 hearing, Ms. Wilturner complained that she experiences pain in her neck, arms, hands, fingers, and ankles every day, accompanied by numbness, tingling, and trouble gripping objects.[45]  She does very little housework, very little laundry, and no shopping.[46]  She claims that she can only sit for twenty to

---

[43]     Rec. Doc. 7-2 at 11.

[44]     Rec. Doc. 7-2 at 34-35.

[45]     Rec. Doc. 7-3 at 74-76, 78, 80-81.

[46]     Rec. Doc. 7-3 at 74.

thirty minutes at a time without pain, but has no trouble walking.[47]  Her doctor

prescribed Lortab for her pain, but she declined to take it, citing unpleasant side

effects.[48]  She testified that her pain and other symptoms are relieved by injections.[49]

She takes muscle relaxers but those cause drowsiness.[50]  At the time of the hearing

she was taking Cymbalta and Amitriptyline, which are antidepressants;[51] Premarin,

which treats menopausal symptoms;[52] Zolpidem, which treats insomnia;[53]

Cyclobdnaprine, which relieves muscle spasms;[54] and Meloxicam, which is a

nonsteroidal anti-inflammatory medication used to treat pain or inflammation.[55]

---

[47]     Rec. Doc. 7-3 at 73.

[48]     Rec. Doc. 7-3 at 78-79.

[49]     Rec. Doc. 7-3 at 73.

[50]     Rec. Doc. 7-3 at 79.

[51]     WebMD, www.webmd.com/drugs/drug-91491-Cymbalta+oral.aspx?drugid=91491 (last visited June 16, 2014); Drugs.com, www.drugs.com/amitryptiline.html (last visited June 16, 2014).

[52]     Rxlist.com, www.rxlist.com/premarin-drug/indications-dosage.htm (last visited June 16, 2014).

[53]     National Institutes of Health, www.nlm.nih.gov/medineplus/druginfo/meds/a693025,html (last visited June 16, 2014).

[54]     Rxlist.com, www.rxlist.com/flexeril-drug/indications-dosage.htm (last visited June 16, 2014).

[55]     National Institutes of Health, www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.htm#why (last visited June 16, 2014).

Ms. Wilturner's insured status under the Social Security Act expired on September 30, 2006 (her "date last insured.").[56]  Thus, the adjudicated period for her DIB application was June 1, 2004 (the alleged onset date) through September 30, 2006 (the date last insured), while that for her SSI application was January 18, 2011 (the application date) through March 9, 2012 (the date of the ALJ's decision).

On July 28, 2011, it was determined that Ms. Wilturner is not disabled.[57]  She requested a hearing,[58] which was held on February 13, 2012.[59]  The ALJ issued an unfavorable ruling on March 9, 2012.[60]  Ms. Wilturner requested review by the Appeals Council, but her request was denied.[61]  Therefore, the ALJ's ruling is the Commissioner's final decision.  In March 2013, Ms. Wilturner instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[62] Ms. Wilturner now argues that the Commissioner erred in failing to find that she is disabled.

---

[56]      Rec. Doc. 7-1 at 16.

[57]      Rec. Doc. 7-3 at 61.

[58]      Rec. Doc. 7-1 at 29.

[59]      Rec. Doc. 7-3 at 68.

[60]      Rec. Doc. 7-1 at 14-22.

[61]      Rec. Doc. 7-1 at 6.

[62]      Rec. Doc. 1.

## ASSIGNMENT OF ERRORS

Ms. Wilturner contends that the Commissioner erred in finding her not disabled.  More specifically, she contends, first, that the ALJ failed to properly weigh her doctors' opinions concerning her ability to work full time, and, second, that the ALJ failed to properly evaluate her credibility.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[63]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[64]  Substantial evidence is more than a mere scintilla and less than a preponderance.[65]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[66]   Finding substantial evidence requires

---

[63]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000).

[64]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[65]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[66]     *Boyd v. Apfel,* 239 F.3d at 704.

scrutiny of the entire record as a whole.[67]  In applying this standard, the court may not

reweigh the evidence or substitute its judgment for that of the Commissioner.[68]

A claimant seeking Social Security benefits bears the burden of proving that

he or she is disabled.[69]  Disability is defined in the Social Security regulations as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

12 months."[70]  Substantial gainful activity is defined as work activity involving

significant physical or mental abilities for pay or profit.[71]

The Commissioner uses a sequential five-step inquiry to determine whether a

claimant is disabled.  At step one, an individual who is working and engaging in

substantial gainful activity will not be found disabled regardless of medical findings.

At step two, an individual who does not have a severe impairment will not be found

disabled.  At step three, an individual who meets or equals an impairment listed in the

---

[67]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[68]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[69]      *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[70]      42 U.S.C. § 423(d)(1)(A).

[71]      20 C.F.R. § 404.1572(a)-(b).

regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[72]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[73] by determining the most that the claimant can still do despite his physical and mental limitations based on all of the relevant evidence in the claimant's record.[74]  The claimant's residual functional capacity is used at step four to determine if the claimant can still do his past relevant work and at step five to determine whether the claimant can adjust to any other type work.[75]

---

[72]    *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[73]    20 C.F.R. § 404.1520(a)(4).

[74]    20 C.F.R. § 404.1545(a)(1).

[75]    20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps.[76]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[77]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[78]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[79]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[80]

In this case, the Commissioner found, at step one, that Ms. Wilturner has not engaged in substantial gainful activity since her alleged disability onset date of June 1, 2004.[81]  That finding is supported by evidence in the record.

---

[76]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[77]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[78]    *Fraga v. Bowen*, 810 F.2d at 1304.

[79]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[80]    *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[81]    Rec. Doc. 7-1 at 16.

At step two, the ALJ found that Ms. Wilturner has the following severe impairments: degenerative disc disease of the cervical spine, and status-post cervical fusion at levels C5-6 and C6-7.[82]  This finding is also supported by evidence in the record.

At step three, the ALJ found that Ms. Wilturner does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[83] Ms. Wilturner does not dispute this finding.

The ALJ then found that Ms. Wilturner retains the residual functional capacity to perform sedentary work if a sit/stand option is made available so that she can sit for thirty minutes then stand or walk for five to ten minutes.[84]  Ms. Wilturner argues that, in reaching this conclusion, the ALJ improperly evaluated her residual functional capacity.

At step four, the ALJ found that Ms. Wilturner is not capable of performing any prior relevant work.[85]  Ms. Wilturner does not disagree with this finding.

---

[82]     Rec. Doc. 7-1 at 17.

[83]     Rec. Doc. 7-1 at 18.

[84]     Rec. Doc. 7-1 at 17.

[85]     Rec. Doc. 7-1 at 21.

At step five, the ALJ found that there are jobs that exist in the national economy that Ms. Wilturner can perform; accordingly, the ALJ found that Ms. Wilturner is not disabled.[86]   Ms. Wilturner disputes this finding, arguing that the Commissioner's conclusion that she is not disabled is erroneous.

## DISCUSSION

Ms. Wilturner's first argument is that the ALJ failed to properly weigh the opinions of her treating physicians.  Her second argument is that the ALJ failed to properly evaluate her credibility.

## A.   THE PROPER WEIGHT TO BE GIVEN TO THE TREATING PHYSICIANS' OPINIONS

The ALJ has sole responsibility for determining the claimant's disability status.[87]   Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[88]   In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory

---

[86]        Rec. Doc. 7-1 at 21-22.

[87]        *Newton v. Apfel*, 209 F.3d at 455.

[88]        *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[89]  If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[90]  Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[91]  Before declining to give any weight to the opinions of a treating doctor, an ALJ must also consider the length of treatment by the physician, the frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any.[92]

In this case, the ALJ gave great weight to Dr. Gillespie's opinion that Ms. Wilturner was limited to sedentary activity.[93]  Ms. Wilturner argues that the ALJ should also have given great weight to Dr. Gillespie's opinion that she could only

---

[89]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

[90]     *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

[91]     *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

[92]     *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

[93]     Rec. Doc. 7-1 at 21.

work part-time.  But Dr. Gillespie did not consistently or solely opine that Ms. Wilturner was limited to performing part-time work.  Instead, in August 2005, when Dr. Goldware was of the opinion that Ms. Wilturner could not return to work at all, Dr. Gillespie believed that she could perform light duty work on a full time basis. Later, in 2007 through 2008, Dr. Gillespie opined that Ms. Wilturner was limited to sedentary work.  On four dates in 2007, Dr. Gillespie opined was that Ms. Wilturner could perform sedentary work only a part-time basis.[94]  On two later dates, September 27, 2007 and March 17, 2008, Dr. Gillespie's opinion was that Ms. Wilturner could perform sedentary work but he did not indicate whether he thought she could work full time or only part-time.[95]  Because the most recent opinions from Dr. Gillespie do not limit Ms. Wilturner to part-time work and because Dr. Gillespie had demonstrated that he could, if appropriate, indicate whether his patient was capable of only part-time employment, it was appropriate for the ALJ to consider the later omission of the part-time restriction.

It is also notable that all of the dates on which Dr. Gillespie opined that Ms. Wilturner was limited to part-time sedentary work are beyond her date last insured and, for that reason, are not relevant to her application for DIB benefits.

---

[94]    Rec. Doc. 7-2 at 23, 25-27.

[95]    Rec. Doc. 7-2 at 20, 22.

Ms. Wilturner argues that Dr. Goldware's opinion that she was not capable of working full time should be given great weight.  But the fact that Dr. Gillespie and Dr. Goldware disagreed in August 2005 about Ms. Wilturner's ability to work full time required that the ALJ choose one doctor's opinion above the other.  "Conflicts in the evidence are for the Secretary and not the courts to resolve."[96]  It was not incorrect for the ALJ to give great weight to Dr. Gillespie's opinions and to discount Dr. Goldware's opinions.  First, Dr. Goldware discharged Ms. Wilturner from his care in November 2005 in favor of Dr. Gillespie's continuing to treat her.  Therefore, it would be inappropriate to discount Dr. Gillespie's later opinions in favor of Dr. Goldware's earlier opinions.  Second, there are no objective findings, diagnostic studies, or other substantial evidence – aside from Dr. Goldware's earlier opinion – that are contrary to Dr. Gillespie's opinion that Ms. Wilturner was capable of performing sedentary work.

The undersigned finds that the ALJ did not err in giving great weight to Dr. Gillespie's opinion that Ms. Wilturner is capable of performing sedentary work.  That opinion is well supported by the medical evidence in the record.  The undersigned also finds that the ALJ did not err in discounting Dr. Gillespie's opinion that she

---

[96]     *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

could only work part-time, and did not err in failing to give Dr. Goldware's contrary opinions controlling weight, since the ALJ had to resolve conflicts in the evidence in order to evaluate Ms. Wilturner's residual functional capacity.

## B.   THE ALJ'S CREDIBILITY DETERMINATION

Ms. Wilturner's second argument is that the ALJ failed to properly evaluate her credibility.  Ms. Wilturner's primary complaint is pain.  The mere existence of pain is not an automatic ground for obtaining disability benefits.[97]  A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.[98]  Subjective complaints of pain must be corroborated by objective medical evidence.[99]  In this case, it is clear that there is a valid objective basis for Ms. Wilturner's pain.  But pain is a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[100] Ms. Wilturner's pain does not fit in that category.   An impairment that can be

---

[97]    *Nugent v. Astrue*, 278 Fed. App'x 423, 427 (5th Cir. 2008); *Hames v. Heckler*, 707 F.2d at 166.

[98]    20 C.F.R. § 404.1529(c)(4).

[99]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[100]    *Nugent v. Astrue*, 278 Fed. App'x at 427; *Chambliss v. Massanari*, 269 F.3d at 522.

controlled or remedied by medication or therapy cannot serve as a basis for finding disability.[101]  Since Ms. Wilturner has obtained relief from her neck pain with epidural injections, her pain is not disabling.  Furthermore, Ms. Wilturner has declined to take pain medication prescribed by her treating physician.  A lack of prescription pain medication lessens the credibility of a claimant's alleged pain.[102]  The record also contains references to a possible magnification of symptoms by Ms. Wilturner.[103] Accordingly, the undersigned finds that the evidence in the record supports the ALJ's credibility conclusion.

Ms. Wilturner argues that "a credibility choice based upon a misinterpretation of medical records requires reversal and remand."[104]  But there is no indication that the ALJ misinterpreted medical records when he resolved the conflict between Dr. Goldware's and Dr. Gillespie's opinions concerning Ms. Wilturner's residual functional capacity or when he resolved the conflict in Dr. Gillespie's opinions concerning Ms. Wilturner's ability to work full time or part-time.  Instead, the ALJ

---

[101]   See *Johnson v. Bowen*, 864 F.2d at 348; *Johnson v. Sullivan*, 894 F.2d at 686.

[102]   See, *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).

[103]   Rec. Doc. 7-1 at 70, 75.

[104]   Rec. Doc. 8 at 10.

was resolving conflicts in the evidence, which is a part of the work he must do in making a disability determination.

### CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the claimant, Joan Wilturner, failed to prove that she is disabled.  The undersigned further finds that Commissioner's ruling that Ms. Wilturner is not disabled is supported by substantial evidence and was reached by the application of proper legal standards.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 30th day of June 2014.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE


COPY SENT:

DATE:    7/1/2014
BY:          EFA
TO:          RFD
                  cg

-22-